### THE HORACE B. PARKER.

#### CHISHOLM et al. v. ABBOTT et al.

(Circuit Court of Appeals, First Circuit. January 9, 1896.)

#### No. 140.

1. COLLISION—LIGHTS—EVIDENCE—PRESUMPTIONS.

In this case one vessel was not held in fault, as against the direct and well-sustained testimony of her two lookouts that no light was burning on the vessel with which she collided, merely upon the inference that a light which was burning in a strong wind at midnight was also burning four hours later.

2. SAME—ADMISSIONS IN PLEADINGS.

Where the answer alleged "that there was a heavy vapor or mist at the time, and the night was very thick," and that the other vessel did not sound a fog horn, or use any other signal required by law under the circumstances, this constitutes a conclusive admission that claimant's vessel was bound to sound a fog horn.

Appeal from the District Court of the United States for the District of Massachusetts.

This was a libel in rem by William V. Abbott and others, owners of the schooner pilot boat D. J. Lawlor, against the fishing schooner Horace B. Parker, to recover damages for a collision whereby the Lawlor was sunk and lost. The district court rendered a decision holding the Parker solely in fault, and the claimants appeal.

Edward S. Doge and John J. Flaherty, for appellants.

Eugene P. Carver (Edward E. Blodgett, on the brief), for appellees.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. This case involves only questions of fact. It grows out of a collision which occurred between the fishing vessel Horace B. Parker and the pilot-boat D. J. Lawlor about 20 minutes before 4 o'clock on a very cold morning in January. Each vessel was schooner rigged. The Parker was about 90 feet long, and the Lawlor about 73. The wind was from the northwest, and so strong that each vessel was under reefed sails. The night was clear overhead, but there is a dispute whether there was not a thick mist on the water. Each vessel was closehauled, with the Lawlor on the starboard tack, and so to the leeward and starboard of the Parker until the moment of the collision. The Lawlor's story is that she had left all her pilots, and was returning to port with a crew of four boat keepers and a steward; that two men were on deck, having been on watch nearly four hours; that, seeing the Parker approaching, one of the men on watch went below, got a blue light, and flashed it; that she was struck by the Parker on the port quarter, aft the main rigging; and that she immediately sunk with all on board, except the steward, who saved himself by climbing aboard the other vessel. The steward has testified fully. The Parker says that, on account of the severity of the night, she had three men on deck, two of them on the lookout, and that she changed her watch every two hours. One lookout was just forward of the foremast, and the other amidships, each walking from port to starboard and back. They were in position to have seen the Lawlor as she came up under their lee. These three men shifted their duties every 40 minutes, so the forward lookout had been at his post only 20 minutes when the collision occurred. Both testify that they saw no light until the blue light flashed under their bow, too late to avoid a collision.

It thus appears that the first question is the condition of the Lawlor's red light. The only evidence from the Lawlor about it is that of the steward, who says he saw it trimmed, and also saw it burning brightly at 8 o'clock and at 12. Two witnesses swear that, just after the collision, he said he last saw it at 8. On the other hand, there is the direct testimony of the two lookouts that the Lawlor's red light was not visible. The opinion of the learned judge who tried the cause in the district court indicates that the steward made a more favorable impression as a witness than the lookouts. If this were a case of direct testimony on each side, this would necessarily have great weight with us. But the evidence of the lookouts appears fair in the record, and has not been attacked in any specific particular, except by some suggestions which find no support in the proofs; and, even if there was no mist, we do not think the rules of law permit us to find a vessel in fault, against direct proof of this character, merely on the inference that a light burning in a

strong wind at midnight was also burning four hours later. The incident of the blue light strengthens the theory of the Parker. It is difficult to understand why the watch should have gone below for it, unless he had unexpectedly found that his port light had failed.

But there is one further difficulty. The answer of the Parker alleges "that there was a heavy vapor or mist at the time, and the night was very thick," and it charges as follows:

"And, further answering, claimants say that the said collision was caused entirely by the improper conduct and the negligence and want of care of those on board the said pilot-boat, D. J. Lawlor, in that they had no lookout forward; had no lights set and burning as required by law; did not sound a fog horn, or use any other signal required by law under the circumstances; had only one man, if any, on deck at the time of said collision; and did not use proper means and precautions to avoid said collision."

Thus, the Parker puts herself in fault by her admission of record, because, if there was such a mist as required the Lawlor to sound her horn, it equally required the Parker to do the same. Is it clear that her failure to do so did not contribute to the collision? We think it is not. If she had sounded a mechanical fog horn, the Lawlor, being to the leeward, might, and probably would, have heard it at a considerable distance, and replied with her horn, or shown a flash light or torch sooner, even though she kept her course. The vessels were so short that even two or three seconds saved in this way would have passed the Parker under the stern of the Lawlor. In dealing with this proposition, we do not find it necessary to weigh the proofs on the question whether there was a mist which rose high enough to obscure the lights of these vessels, because the Parker, of her own motion, has so stated the matter on record as to be conclusive against her. The decree of the district court is reversed, and the case is remanded to that court, with directions to enter a decree dividing equally the damages and the costs in each court.